# 23-7577

## United States Court of Appeals for the Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

— v. —

DOUGLASS MACKEY,

*Defendant-Appellant.*

On Appeal from the United States District Court for the
Eastern District of New York
Case No. 21-cr-00080-AMD

## BRIEF OF FORMER DEPARTMENT OF JUSTICE OFFICIALS AS AMICI CURIAE IN SUPPORT OF THE APPELLANT

Matthew L. Schwartz
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
(212) 303-3646

Eric M. Palmer
BOIES SCHILLER FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
(954) 377-4250

# <u>TABLE OF CONTENTS</u>

Page(s)

INTERESTS OF AMICI ................................................................ 1

SUMMARY OF ARGUMENT ..................................................... 2

ARGUMENT ............................................................................... 4

    I.    § 241 Does Not Criminalize Private Conspiracies To Violate Constitutional Rights Secured Against State Actors. ............................... 4

    II.    Mackey's Conviction Is Invalid Because The Right To Vote In Presidential Elections Is Secured Only Against State Actors. ............... 12

        A.    Any Federal Protections For The Right To Vote For President Relevant Here Apply Only To State Actors. ................................. 12

        B.    Mackey Was Not A State Actor. ...................................................... 17

CONCLUSION ........................................................................... 19

CERTIFICATE OF COMPLIANCE .......................................... 21

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*American Mfrs. Mut. Ins. Co. v. Sullivan,*
  526 U.S. 40 (1999) ........................................................... 18

*Baker v. Carr,*
  369 U.S. 186 (1962) ......................................................... 14

*Bush v. Gore,*
  531 U.S. 98 (2000) ............................................. 3, 12, 13, 15

*Chiafalo v. Washington,*
  140 S.Ct. 2316 (2020) ....................................................... 13

*Ex parte Yarbrough,*
  110 U.S. 651 (1884) ......................................................... 15

*Griffin v. State of Maryland,*
  378 U.S. 130 (1964) ......................................................... 19

*Jackson v. Metropolitan Edison Co.,*
  419 U.S. 345 (1974)) ........................................................ 17

*League of United Latin American Citizens v. Abbott,*
  951 F.3d 311 (5th Cir. 2020) .............................................. 13

*Little v. United States,*
  93 F.2d 401 (8th Cir. 1937) ............................................... 14

*Lugar v. Edmondson Oil Co.,*
  457 U.S. 922 (1982) ............................................... 2, 4, 7, 12

*Lyman v. Baker,*
  954 F.3d 351 (1st Cir. 2020) .............................................. 13

*Manhattan Cmty. Access Corp. v. Halleck,*
  139 S.Ct. 1921 (2019) ............................................... 7, 17, 18

*McPherson v. Blacker,*
  146 U.S. 1 (1892) ............................................................ 12

*NCAA v. Tarkanian,*
488 U.S. 179 (1988) ........................................................................ 18

*New York State Nat'l Org. for Women v. Terry,*
886 F.2d 1339 (2d Cir. 1989) ........................................................... 6

*Romeu v. Cohen,*
265 F.3d 118 (2d Cir. 2001) ........................................................... 13

*Shelley v. Kraemer,*
334 U.S. 1 (1948) ............................................................................ 3

*The Civil Rights Cases,*
109 U.S. 3 (1883) .......................................................................... 11

*United Brotherhood of Carpenters & Joiners v. Scott,*
463 U.S. 825 (1983) ................................................................ 5, 6, 8

*United States v. Ali,*
561 F.Supp.2d 265 (E.D.N.Y. 2008) ............................................... 8

*United States v. Allen,*
341 F.3d 870 (9th Cir. 2003) ........................................................ 16

*United States v. Anderson,*
481 F.2d 685 (4th Cir. 1973) ....................................................... 6, 9

*United States v. Causey,*
185 F.3d 407 (5th Cir. 1999) ........................................................... 6

*United States v. Classic,*
313 U.S. 299 (1941) ...................................................................... 15

*United States v. Cruikshank,*
92 U.S. 542 (1876) ................................................................. 2, 5, 8

*United States v. Giordano,*
693 F.2d 245 (2d Cir. 1982) ........................................................... 8

*United States v. Guest,*
383 U.S. 745 (1965) ............................................................... passim

*United States v. Harris,*
106 U.S. 629 (1883) ............................................................. 4, 10, 11

iii

*United States v. Kozminski,*
    487 U.S. 931(1988) ...........................................................................7, 9, 16

*United States v. Martínez-Mercado,*
    919 F.3d 91 (1st Cir. 2019) ...................................................................4, 6, 9

*United States v. Morrison,*
    529 U.S. 598 (2000) ...........................................................................passim

*United States v. Mosley,*
    238 U.S. 383 (1915) ................................................................................. 10

*United States v. Nelson,*
    277 F.3d 164 (2d Cir. 2002) ..................................................................... 16

*United States v. Olinger,*
    759 F.2d 1293 (7th Cir. 1985) .................................................................... 6

*United States v. Price,*
    383 U.S. 787 (1966) ...........................................................................passim

*United States v. Reese,*
    2 F.3d 870 (9th Cir. 1993).......................................................................6, 9

*United States v. Trapilo,*
    130 F.3d 547 (2d Cir. 1997)........................................................................ 8

*Walker v. United States,*
    93 F.2d 383 (8th Cir. 1937) ...............................................................4, 14, 15

*West v. Atkins,*
    487 U.S. 42 (1988) ................................................................................... 18

*Williams v. Rhodes,*
    393 U.S. 23 (1968) .............................................................................3, 13, 14

**Statutes**

18 U.S.C. § 241..........................................................................................passim

18 U.S.C. § 245..........................................................................................16, 17

18 U.S.C. § 51.................................................................................................. 14

42 U.S.C. § 1985.............................................................................................5, 6

**Other Authorities**

Civil Rights Act of 1871 ............................................................... 10

Enforcement Act of 1870.......................................................... 2, 5

U.S. Const. amend. I .................................................................. 7

U.S. Const. amend. IV ............................................................... 7

U.S. Const. amend. XIII .............................................. 9, 15, 16, 19

U.S. Const. amend. XIV .....................................................passim

U.S. Const. amend. XIX ........................................................... 13

U.S. Const. amend. XV.....................................................3, 13, 15

Violence Against Women Act of 1994, 108 Stat. 1941-42............. 10

**Rules**

Federal Rule of Appellate Procedure 29(a)(2)................................. 1

Federal Rule of Appellate Procedure 29(a)(4)(E) ........................... 1

## INTERESTS OF AMICI

*Amici* are former officials of the Civil Rights Division of the United States Department of Justice ("DOJ") who served in six presidential administrations under Presidents from both major political parties.[1]  As former officials who were charged with ensuring the fair and impartial enforcement of federal law, *amici* have a strong interest in ensuring that § 241 is applied consistently with settled constitutional and doctrinal limitations, as well as DOJ's longstanding practice of using § 241 only to prosecute conspiracies to violate a discrete and limited set of rights.  *Amici* submit this brief to offer their informed perspective on § 241 and to explain why the Government's position in this case cannot be reconciled with well-established state-action principles that generally prohibit § 241 prosecutions of private persons—like Douglass Mackey— for conspiring to violate constitutional rights.  *Amici* and their experience in DOJ are listed below.

**J. Christian Adams** was an attorney in the Voting Section of the Civil Rights Division from 2005 to 2010.

**J. Stanley Pottinger** was Assistant Attorney General for the Civil Rights Division from 1973 to 1977 and Director of the Office for Civil Rights at the

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), *amici* affirm that no counsel for a party authored this brief in whole or in part and that no person other than *amici* or their counsel has made any monetary contributions intended to fund the preparation or submission of this brief.  All parties have provided consent for the filing this amicus brief, so *amici* have authority to file under Federal Rule of Appellate Procedure 29(a)(2).

Department of Health, Education, and Welfare (now the Department of Health and Human Services) from 1970 to 1973.

**Bradley J. Schlozman** was Deputy Assistant Attorney General for the Civil Rights Division from 2003 to 2006 (serving as Acting Assistant Attorney General in 2006) and United States Attorney for the Western District of Missouri from 2006 to 2007.

**Mary Thomas** served as Deputy Assistant Attorney General for the Civil Rights Division from 2018 to 2019 and Director of Policy for the Office of Justice Programs from 2017 to 2018.

## SUMMARY OF ARGUMENT

18 U.S.C. § 241 criminalizes conspiracies to "injure" any person "in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States." With few exceptions, "rights secured by the Constitution are protected only against infringement by governments." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982) (citation omitted). For this reason, Supreme Court precedent has long held that § 241 does not criminalize conspiracies to violate constitutional rights that "protect[] the individual against state action" unless "the conspiracy included action by the State." *United States v. Price*, 383 U.S. 787, 799 (1966) (citation omitted); *United States v. Guest*, 383 U.S. 745, 754-55 (1965); *United States v. Cruikshank*, 92 U.S. 542 (1876) (interpreting § 6 of the Enforcement Act of 1870, the ancestor of § 241, to require government participation for conspiracies to violate rights guaranteed against states).

2

As Mackey demonstrates in his brief, *see* Opening Br. at 33-34, the Government and the district court ignored this longstanding limitation on the scope of § 241 in this case. Mackey was convicted of conspiring to violate the constitutional right to vote for President without so much as an allegation that he was a state actor or that his conspiracy involved any level of government participation. The right to vote in a presidential election is secured principally by the Fourteenth Amendment. *See Bush v. Gore*, 531 U.S. 98, 104-105 (2000); *Williams v. Rhodes*, 393 U.S. 23, 29 (1968). But the Fourteenth Amendment prohibits "only such action as may fairly be said to be that of the States" and "erects no shield against merely private conduct, however discriminatory or wrongful." *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948). The same is true of other rights that safeguard the right to vote for President, such as the Fifteenth Amendment. Thus, § 241 only criminalizes conspiracies to violate the right to vote for President insofar as they involve state action. Mackey was a private person acting without aid of any government official, so his conviction under § 241 is plainly invalid.

Affirming Mackey's conviction despite this obvious state-action problem would have far-reaching consequences. Interpreting § 241 to criminalize purely private conspiracies to violate constitutional rights would convert the Constitution from a system of limitations on government power into a new chapter of Title 18 of the United States Code. Adopting this approach would also throw the Second Circuit into conflict with every other circuit to have considered the application of § 241 to private conspiracies against constitutional rights in general, and the right to vote for President

3

in particular. *See, e.g.*, *United States v. Martínez-Mercado*, 919 F.3d 91, 98-99 (1st Cir. 2019) (Private conspiracies to violate rights secured against state action "are plainly excluded from liability under section 241." (citation omitted)); *Walker v. United States*, 93 F.2d 383, 388-89 (8th Cir. 1937) (holding indictment for conspiracy to violate the right to vote for President "does not state a federal offense"). Beyond that, extending § 241 to private conspiracies to violate rights against state action would jeopardize the statute's constitutional validity by bringing it into conflict with the principle that Congress cannot use its powers under the Fourteenth Amendment to criminalize "'the action of private persons, without reference to the laws of the State.'" *United States v. Morrison*, 529 U.S. 598, 621 (2000) (quoting *United States v. Harris*, 106 U.S. 629, 640 (1883)). For these reasons, as well as the others identified in Mackey's brief explaining that §241 does not criminalize deceptive speech, *see* Opening Br. at 12-34, this Court should reverse Mackey's conviction.

## ARGUMENT

### I.    § 241 Does Not Criminalize Private Conspiracies To Violate Constitutional Rights Secured Against State Actors.

§ 241 criminalizes conspiracies to violate rights or privileges "secured" by "the Constitution or laws of the United States." With few exceptions, "rights secured by the Constitution are protected only against infringement by governments." *Lugar*, 457 U.S. at 936 (citation omitted). For this reason, Supreme Court precedent has long held that private persons cannot be convicted under § 241 for conspiring to violate constitutional

4

rights that "protect[] the individual against *state action*" unless "the conspiracy included action by the State." *Price*, 383 U.S. at 799; *Guest*, 383 U.S. at 754-55. This principle can be traced back to *Cruikshank*, where the Court held that § 6 of the Enforcement Act of 1870—the direct ancestor of § 241—did not reach private conspiracies to violate rights that "simply furnish[] an additional guaranty against any encroachment by the States upon the fundamental rights which belong to every citizen as a member of society." 92 U.S. at 554.

Nothing in later Supreme Court caselaw has ever called these precedents into question. To the contrary, in *United Brotherhood of Carpenters & Joiners v. Scott*, 463 U.S. 825 (1983), the Court extended the principle of *Guest* and *Price* to 42 U.S.C. § 1985(3), a cousin of § 241 that, among other things, provides civil remedies for conspiracies to deprive any person of "the equal protection of the laws" and conspiracies "to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy" to any qualified "elector for President or Vice President." As the Court explained, because § 1985(3) only incorporates preexisting rights and does not abrogate state-action requirements, it has no application "when the alleged conspiracy is aimed at a right that is by definition a right only against state interference" unless "the conspiracy contemplated state involvement." 463 U.S. at 833; *see also id.* at 831-32 (citing *Guest*, *Price*, and *Cruikshank*).[2]

---

[2] *United Brotherhood* indicates that a conspiracy to violate a right secured only against state action "is not a violation or § 1985(3) unless it is proved that the state is

In reliance on *Price* and *Guest*, the other circuits have reiterated many times over that private conspiracies to interfere with rights secured against governments "are plainly excluded from liability under section 241." *Martínez-Mercado*, 919 F.3d at 98-99; *United States v. Causey*, 185 F.3d 407, 413 (5th Cir. 1999) ("§ 241 has been construed to require state action"); *United States v. Reese*, 2 F.3d 870, 896 (9th Cir. 1993) (private parties cannot be convicted under § 241 absent a conspiracy with government officials or a conspiracy to violate rights secured against private actors); *United States v. Olinger*, 759 F.2d 1293, 1302-1304 (7th Cir. 1985) (similar); *United States v. Anderson*, 481 F.2d 685, 700 (4th Cir. 1973) (similar). And although this Court does not appear to have addressed the applicability of § 241 to private conduct, it has acknowledged that § 1985(3) requires state action "[w]hen the asserted constitutional deprivation is based upon a right guaranteed against government interference." *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1358 (2d Cir. 1989).

---

involved in the conspiracy *or that the aim of the conspiracy is to influence the activity of the State*." 463 U.S. at 830 (emphasis added). This formulation reflects the fact that § 1985(3) reaches conspiracies "for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws" in addition to conspiracies "for the purpose of depriving … persons" of "equal protection." 42 U.S.C. § 1985. § 241, by contrast, is limited to conspiracies to "injure" persons in the exercise of rights "secured by the Constitution or laws of the United States," and contains no language reaching private conspiracies to *influence* state activity. And in any event, even if § 241 had language addressing conspiracies to influence state activity, Mackey intended to influence *voters*, not any "constituted authority" of a State.

This state-action requirement is dictated by the plain text of § 241 and basic principles of constitutional law. By its "clear language," § 241 criminalizes conspiracies to violate rights "secured" by the laws of the United States and the Constitution "itself." *Guest*, 383 U.S. at 754-55; *see also United States v. Kozminski*, 487 U.S. 931, 941 (1988) ("Section 241 creates no substantive rights, but prohibits interference with rights established by the Federal Constitution or laws and by decisions interpreting them."). Thus, § 241 simply provides a criminal remedy for violations of the rights it "incorporates by reference"—it does not alter the substantive content of those rights, and thus cannot transform rights against governments into rights against private individuals. *Kozminski*, 487 U.S. at 941.

By definition, private persons cannot violate constitutional rights that "can be violated only by conduct that may be fairly characterized as 'state action.'" *Lugar*, 457 U.S. at 924. For example, when a private person beats another person senseless, their conduct may well constitute battery, but it does not violate the Fourth Amendment. Similarly, when "a private entity provides a forum for speech, the private entity is not ordinarily constrained by the First Amendment because the private entity is not a state actor." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S.Ct. 1921, 1930 (2019). A private entity "may thus exercise editorial discretion over the speech and speakers in the forum" in ways that could never be done by a government, such as "exclud[ing] speech or speakers from the forum on the basis of viewpoint." *Id.*

For the same reason, private persons cannot "conspire" to violate a "right that is by definition a right only against state interference." *United Brotherhood*, 463 U.S. at 833. A conspiracy requires an agreement "to commit a substantive offense which, if attainable, would have violated a federal [law]." *United States v. Giordano*, 693 F.2d 245, 249 (2d Cir. 1982). People cannot "conspire" to engage in conduct that is not criminal in the first place. Similarly, persons cannot "conspire" to violate a right "secured" by the Constitution unless their intended course of conduct would amount to a violation of that right—and that cannot occur when the conspirators are private persons and the right at issue is only secured against governments. As the Supreme Court explained long ago, when "the right, the enjoyment of which the conspirators intended to hinder or prevent" is not secured against private action by the Constitution or federal law, "the criminal matter charged has not been made indictable by any act of Congress." *Cruikshank*, 92 U.S. at 549.[3]

---

[3] This Court has said that "legal impossibility affords a conspirator no defense" to a conspiracy charge. *United States v. Trapilo*, 130 F.3d 547, 552 n.9 (2d Cir. 1997). But this case "use[d] the label 'legal impossibility' to refer to the impossibility of actually accomplishing the intended plot," not the different impossibility that arises when "the goal" of the conspiracy "was not even criminal." *United States v. Ali*, 561 F.Supp.2d 265, 267-68 (E.D.N.Y. 2008). Under § 241, the underlying predicate of a conspiracy is not a criminal act, but a violation of a "right or privilege" secured by the Constitution or federal law. But the same rule applies: when the predicate of a § 241 conspiracy would not actually violate the Constitution or federal law if carried out by the conspirators, they have not actually agreed to "violate" a right "secured by the Constitution or laws of the United States," and their agreement does not violate § 241.

This, of course, does not mean that private parties cannot violate § 241 *at all*. Courts have recognized that "[p]rivate individuals can run afoul of section 241" in two categories of cases: (i) cases involving conspiracies between private persons and "police officers or other officials" to violate rights secured against government interference; and (ii) cases in which a "private conspiracy" involves a plan to interfere with "rights whose violation does not require 'state action,'" such as rights that arise from the Thirteenth Amendment or federal statutes enacted under the Commerce Clause. *Reese*, 2 F.3d at 896. In the first category, "active connivance by agents of the State in the wrongful acts done in furtherance of the conspiracy" suffices to "meet the test of state action, as required under the rule enunciated in *Guest*." *Anderson*, 481 F.2d at 700 (citation omitted); *see also Price*, 383 U.S. at 794 ("Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of [§ 241]").[4] In cases in the second category, § 241 applies because the right at issue is "secured" against private infringements as well as state action. *See, e.g., Kozminski*, 487 U.S. at 942 (holding the Thirteenth Amendment's right against slavery and involuntary

---

[4] § 241 precedents use the terms "state action" and "action under color of law" interchangeably. *See, e.g., Price*, 383 U.S. at 794 n.7 (noting that "'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment"); *Martínez-Mercado*, 919 F.3d at 98-99 ("Although section 241 does not specify a 'color of law' requirement, the Fourteenth Amendment requires it." (citation omitted)); *Anderson*, 481 F.2d at 700 ("'Under color' of law has been construed as identical with and as representing state action.").

9

servitude "establishes a constitutional guarantee that is protected by § 241" against private interference).

But outside of these two categories, applying § 241 to criminalize private conspiracies would create serious constitutional problems. The primary "'source of congressional power'" to enact § 241 was § 5 of the Fourteenth Amendment, which empowers Congress to "'enforce, by appropriate legislation'" the Amendment's substantive provisions and the fundamental rights it incorporates. *Price*, 383 U.S. at 789-90 n.2 (quoting *United States v. Mosley*, 238 U.S. 383, 386 (1915)). Since *United States v. Harris*, 106 U.S. 629 (1883), the Supreme Court has consistently invalidated laws "'directed exclusively against the action of private persons, without reference to the laws of the State'" for exceeding the limits on "Congress's § 5 power." *Morrison*, 529 U.S. at 621 (2000) (quoting *Harris*, 106 U.S. at 640). In *Morrison*, for example, the Court invalidated § 13981 of the Violence Against Women Act of 1994, 108 Stat. 1941-42, because it was "directed not at any State or state actor, but at individuals who have committed criminal acts motivated by gender bias." *Morrison*, 529 U.S. at 626.

Even more to the point, *Harris* invalidated § 2 of the Civil Rights Act of 1871, a cousin of § 241 that imposed criminal punishments on "private persons" for "conspiring to deprive anyone of the equal protection of the laws." 106 U.S. at 639. As the Court explained, the ratifiers of the Reconstruction Amendments "never supposed" that the Fourteenth Amendment "conferred on Congress the power to enact a law which would punish a private citizen for an invasion of the rights of his fellow

citizen." *Id.* at 644. The Court warned that ignoring state-action limitations would "invest Congress with power over the whole catalogue of crimes" and "the power to punish every crime by which the right of any person to life, property, or reputation is invaded." *Id.* at 643.

Interpreting § 241 to permit prosecution of a private person for conspiring to violate rights secured against governments would generate the same risk—and imperil the constitutional validity a vital tool for protecting civil rights against lawless action by government agents. As the Court explained in *Morrison*, legislation enacted to enforce the Fourteenth Amendment "'must necessarily be corrective in its character, adapted to counteract and redress the operation of … prohibited state laws or proceedings of [s]tate officers.'" 529 U.S. at 624 (quoting *The Civil Rights Cases*, 109 U.S. 3, 18 (1883). In accordance with this principle, *Guest* construed § 241 as a strictly "remedial" statute that "does not purport to give substantive … implementation to any rights secured." 383 U.S. at 754-55. To hold that § 241 criminalizes private conspiracies to violate rights against government action would effectively abrogate this holding and transform § 241 from a statute that provides remedies for violations of existing rights into a substantive statute that criminalizes private interference with constitutional rights.

The result would be a direct conflict with *Harris*'s holding that Congress has no power under the Fourteenth Amendment to "punish a private citizen for an invasion of the rights of his fellow citizen." 106 U.S. at 644. But the Supreme Court has never "cast any doubt upon the enduring vitality … of *Harris*," and for good reason. *Morrison*,

529 U.S. at 624. "Careful adherence to the 'state action' requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power." *Lugar*, 457 U.S. at 936. And *Harris* and other early cases interpreting the scope of Congress's power to enforce the Reconstruction Amendments reflect "the insight attributable to the Members of the Court at that time. Every Member had been appointed by President Lincoln, Grant, Hayes, Garfield, or Arthur—and each of their judicial appointees obviously had intimate knowledge and familiarity with the events surrounding the adoption of the Fourteenth Amendment." *Morrison*, 529 U.S. at 622.

## II. Mackey's Conviction Is Invalid Because The Right To Vote In Presidential Elections Is Secured Only Against State Actors.

### A. Any Federal Protections For The Right To Vote For President Relevant Here Apply Only To State Actors.

Mackey was convicted of conspiring to prevent members of the electorate from validly exercising their constitutional right to vote in the 2016 Presidential Election. That right is created by state law, and the principal constitutional protections for that right derive from other constitutional provisions that protect persons against government action. Begin with Article II, § 1 of the Constitution, which provides that "[e]ach State shall appoint" presidential electors "in such Manner as the Legislature thereof may direct." This provision assigns the power to appoint electors to "[e]ach State," and a State's "power to select the manner for appointing electors is plenary; it may, if it so chooses, select the electors itself." *Bush*, 531 U.S. at 104; *see also McPherson v. Blacker*, 146 U.S. 1, 35 (1892).

For this reason, the Supreme Court has held that "[t]he individual citizen *has no federal constitutional right* to vote for electors for the President of the United States unless and until the state legislature chooses a statewide election as the means to implement its power to appoint members of the electoral college." *Bush*, 531 U.S. at 104 (emphasis added); *see also League of United Latin American Citizens v. Abbott*, 951 F.3d 311, 313 (5th Cir. 2020) (same); *Lyman v. Baker*, 954 F.3d 351, 364 n.8 (1st Cir. 2020) (same); *Romeu v. Cohen*, 265 F.3d 118, 123 (2d Cir. 2001) ("The Constitution thus confers the right to vote in presidential elections on electors designated by the States, not on individual citizens."). This does not mean that the right to vote for President is devoid of constitutional protection. When a state decides to "vest[] the right to vote for President in its people, the right to vote as the legislature has prescribed is fundamental" for purposes of the Fourteenth Amendment. *Bush*, 531 U.S. at 104. On top of that, states cannot "regulate[] the selection of electors" in "a way that violates other specific provisions of the Constitution"—particularly provisions that explicitly regulate the conduct of elections, such as the Fifteenth and Nineteenth Amendments. *Williams*, 393 U.S. at 29; *see also Chiafalo v. Washington*, 140 S.Ct. 2316, 2324 & n.4 (2020).

But these rights apply only to state actors. "[T]he Fourteenth Amendment, by its very terms, prohibits only state action." *Morrison*, 529 U.S. at 621. The same goes for the "Fifteenth and Nineteenth Amendments," which by their plain language bar only "the Federal Government and the States from denying the right to vote on grounds of race and sex in presidential elections." *Williams*, 393 U.S. at 29; *see also Baker v. Carr*,

369 U.S. 186, 208 (1962) ("A citizen's right to a vote free of arbitrary impairment by state action has been judicially recognized as a right secured by the Constitution.").

Thus, under the Supreme Court's § 241 precedents, a conspiracy to violate the right to vote in a presidential election will almost invariably require allegations and proof that the conspirators' plan contemplated the participation of government officials. Rights that run against governments cannot be violated by private conduct—and cannot serve as predicates for § 241 convictions—unless the defendant's conduct was "clearly attributable to the State." *Price*, 383 U.S. at 795. As Mackey's brief points out, *see* Opening Br. at 34, the only precedents that appear to have squarely addressed the issue have held that an indictment charging a conspiracy to interfere with the right to vote for President "does not state a federal offense" because "the right to vote for presidential electors depends directly and exclusively on state legislation." *Walker*, 93 F.2d at 388-89 (interpreting 18 U.S.C. § 51, a predecessor of § 241); *see also Little v. United States*, 93 F.2d 401, 403 & 409 (8th Cir. 1937).[5]

---

[5] Because *Walker* and *Little* were decided before the Supreme Court held that Article II, § 1 does not give States power to impose "burdens" on the right to vote for President that "are expressly prohibited in other constitutional provisions," *Williams*, 393 U.S. at 29, those cases did not consider whether interference with the right to vote for President can be charged as a § 241 predicate when the conspiracy involves government action or interference with a different right that is secured by federal law against private action. Under modern precedent, it seems clear that such conspiracies can be charged as a § 241 violation. But the holding of *Walker* and *Little* remains valid in cases like this one, where the alleged conspiracy did not contemplate government involvement or violations of rights secured against private action.

In this respect, the right to vote for President is different from "the right to vote for representatives in Congress," which the Supreme Court has held to be "secured against the action of individuals, as well as of States." *United States v. Classic*, 313 U.S. 299, 315 (1941); *see also Ex parte Yarbrough*, 110 U.S. 651 (1884). The right to vote for members of Congress is secured against private interference because it derives from Article I, § 2, which provides that Congress "*shall* be composed of Members chosen … by the People of the several States." As the Supreme Court has explained, this provision is by its terms "without restriction or limitation" to state action. *Classic*, 313 U.S. at 315. For this reason, the Court has concluded that the right created by Article I, § 2 regulates private conduct, "unlike those guaranteed by the Fourteenth and Fifteenth Amendments." *Id.* at 315. This logic cannot extend to presidential elections because Article II, § 1 does not create a "federal constitutional right to vote for electors" at all—let alone one secured against private individuals. *Bush*, 531 U.S. at 104; *see also Walker*, 93 F.2d at 388 (distinguishing *Yarbrough* on the ground that the right to vote for "a member of Congress" is created by "[t]he Constitution" rather than "the law of the state" (citation omitted)).

The only plausible candidate for a constitutional right that might afford protections against private interference with the right to vote in presidential elections is the Thirteenth Amendment's right against slavery and involuntary servitude. The Thirteenth Amendment is virtually unique among rights-creating constitutional provisions in regulating both private and government conduct. But of its own force,

the Thirteenth Amendment prohibits only "involuntary servitude enforced by the use or threatened use of physical or legal coercion," not deception intended to trick someone into failing to validly vote. *Kozminski*, 487 U.S. at 944. And as the Supreme Court has held, "in applying § 241," "the Government cannot prove a conspiracy to violate rights secured by the Thirteenth Amendment without proving that the conspiracy involved the use or threatened use of physical or legal coercion." *Id.* Mackey's plan involved neither, so any protections the Thirteenth Amendment may afford to the right to vote are irrelevant here.

Nor can the Government point to any federal statute that secures the right to vote for President against deceptive interference. Congress may well have the *power* to enact such a statute "under Section Two of the Thirteenth Amendment," which, as this Court has held, "extend[s] beyond the prohibition on actual slavery and servitude expressed in Section One." *United States v. Nelson*, 277 F.3d 164, 185 (2d Cir. 2002). And while voting is not an economic activity, it is conceivable that Congress could criminalize deceptive interference with voting in presidential elections using its power under the Commerce Clause. *See, e.g.*, *United States v. Allen*, 341 F.3d 870, 879-83 (9th Cir. 2003) (upholding 18 U.S.C. § 245(b)(2)(B)'s prohibition on racially-motivated interference with participation in state-administered programs under the Commerce Clause). But as Mackey's brief demonstrates, Congress has never enacted a statute criminalizing deceptive interference with presidential elections. *See* Opening Br. at 22 & n.3. The nearest it has come is 18 U.S.C. § 245(b), which makes it unlawful to "by

*force or threat of force* willfully injure[], intimidate[], or interfere[] with" any person's "voting or qualifying to vote … in any primary, special, or general election."  18 U.S.C. § 245(b)(1)(A) (emphasis added).

### B.    Mackey Was Not A State Actor.

The Government cannot invoke any federal constitutional or statutory protections for the right to vote for President that apply to private actors.  Thus, the only way Mackey's conviction can be sustained is by finding some basis on which to treat him as a state actor.  But the Government has never even alleged, much less proven, that he was—and plainly cannot do so for the first time now.  "[A] private entity" or person "can qualify as a state actor in a few limited circumstances," such as "when the government compels the private entity to take a particular action" or "when the government acts jointly with the private entity."  *Manhattan Cmty. Access*, 139 S.Ct. at 1928.  Here, there is no suggestion that Mackey was compelled by government officials to post his memes or that government officials "participated" in the formation or execution of his alleged conspiracy.  *Price*, 383 U.S. at 798 (§ 241 "extends to conspiracies … participated in by officials alone or in collaboration with private persons").

Nor can the Government belatedly claim that Mackey qualifies as a state actor by virtue of exercising "'powers traditionally exclusively reserved to the State.'"  *Manhattan Cmty. Access*, 139 S.Ct. at 1928 (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974)).  Under this standard, "[i]t is not enough that the federal, state, or

17

local government exercised the function in the past, or still does." *Id.* Nor is it "enough that the function serves the public good or the public interest in some way." *Id.* at 1928-29. Instead, "to qualify as a traditional, exclusive public function," the government "must have traditionally *and* exclusively performed the function." *Id.* at 1929. Governments can and do communicate regarding methods of voting in the course of their official duties, but so do candidates engaged in the nongovernmental function of running for election and members of the public who are interested in informing others about how to vote or debating election procedures.

And in any event, "state action requires *both* an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,' *and* that 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citations omitted). Mackey's "right or privilege" to use his Twitter account derived from his personal ownership or control of that account, not a power that "clothed [him] with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (citation omitted). And it goes without saying that a self-described Twitter troll who posted memes online cannot "fairly be said" to be a state actor. To argue otherwise, the Government would need to concede that Mackey's conduct was constitutionally attributable to a state or federal government or its officials. *NCAA v. Tarkanian*, 488 U.S. 179, 191 (1988) (The state-action doctrine "avoids the imposition of responsibility on a State for conduct it

could not control" (citation omitted)).  Suffice to say, the Government is not going to say that any official—whether state or federal—could have been charged with participation in Mackey's alleged conspiracy.[6]

*     *     *

This case has an easy solution.  The Government charged Mackey with violating a right that—except when the Thirteenth Amendment applies—can only be violated by state actors.  But it is undisputed that Mackey is not a state actor, and his conspiracy did not contemplate any level of involvement by government officials.  As such, Mackey's conviction under the charged statute is plainly invalid.

## CONCLUSION

The Court should reverse Mackey's conviction.


Respectfully submitted,

Dated: January 12, 2024

---

[6] Nor can the Government argue that Mackey was a state actor because someone might have mistaken his memes for government speech.  For one, it is highly unlikely that anyone would assume that memes tweeted by an account featuring an avatar wearing a "Make America Great Again" hat were official, governmental election communication.  But beyond that, a private person cannot become a state actor by pretending to be one.  Even in cases involving apparent authority, a purported state actor must be "possessed of state authority and purport[] to act under that authority." *Griffin v. State of Maryland*, 378 U.S. 130, 135 (1964) (finding state action where the defendant "wore a sheriff's badge and consistently identified himself as a deputy sheriff rather than as an employee of the park.").

/s/ *Matthew L. Schwartz*

Matthew L. Schwartz
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
20th Floor
New York, NY 10001
(212) 303-3646

Eric M. Palmer
BOIES SCHILLER FLEXNER LLP
401 East Las Olas Blvd.
Suite 1200
Fort Lauderdale, FL 33301
(954) 377-4250

*Counsel for Amici*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel for *amici curiae* certifies that this brief:

(i)      complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) and Second Circuit Local Rule 29.1(c) because it contains 5,292 words, including footnotes and excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f); and

(ii)      complies with the typeface and style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because this document has been prepared in 14-point Garamond font, a proportionally spaced font.

/s/  *Matthew L. Schwartz*
Matthew L. Schwartz