# 23-7577

## United States Court of Appeals
### *for the*
### Second Circuit

UNITED STATES OF AMERICA,
*Appellee,*

v.

DOUGLASS MACKEY,
*Defendant-Appellant.*

On Appeal from the United States District Court for the
Eastern District of New York

Case No. 21-cr-00080-AMD

## BRIEF OF *AMICUS CURIAE* NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS IN SUPPORT OF DEFENDANT-APPELLANT

Kyle Singhal
HOPWOOD & SINGHAL PLLC
1701 Pennsylvania Ave., N.W.
Washington, DC 20006
Telephone: (817) 212-9041
kyle@hopwoodsinghal.com
*Counsel for Amicus Curiae*

Joshua L. Dratel
LAW OFFICES OF DRATEL & LEWIS
29 Broadway, Suite 1412
New York, New York 10006
(212) 732-0707
jdratel@dratellewis.com

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, counsel for *amicus*

hereby certifies that *amicus* has no parent entities and does not issue stock.

Dated:  January 12, 2024  /s/ Kyle Singhal
*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

Table of Authorities ................................................................. iv

Interest of *Amicus Curiae* ........................................................1

Introduction and Summary of the Argument .............................................2

Argument..............................................................................6

    I.     The district court's theories of venue allow the government to prosecute a defendant in *any* judicial district, contrary to this Court's precedents.......6

    II.    The district court mistakenly viewed posting on a website as analogous, for venue purposes, to making direct communications in the commission of wire fraud ........................................................11

    III.   A narrow construction of venue is necessary to promote and preserve "fair administration of criminal justice and public confidence in it."...........13

Conclusion .........................................................................14

Certificate of Service .............................................................16

Certificate of Compliance ..........................................................16

# TABLE OF AUTHORITIES

## *Cases*

*Ashcroft v. ACLU*, 535 U.S. 564 (2002) ....................................................7

*United States v. Auernheimer*, 748 F.3d 525 (3d Cir. 2014) ................... 8, 9, 10, 11

*United States v. Blaszczak*, 56 F.4th 230 (2d Cir. 2022) .........................................10

*United States v. Brennan*, 183 F.3d 139 (2d Cir. 1999) ............................................7

*United States v. Brown*, 293 F. App'x 826 (2d Cir. 2008) ......................................12

*United States v. Cabrales*, 524 U.S. 1 (1998)...........................................................2

*United States v. Calonge*, 74 F.4th 31 (2d Cir. 2023) ...................................... 10, 11

*United States v. Coplan*, *Coplan*, 703 F.3d 46 (2d Cir. 2012) ...............................10

*United States v. Cores*, 356 U.S. 405 (1958)............................................................3

*United States v. Fortenberry*, No. 22-50144, 2023 U.S. App. LEXIS 34167 (9th Cir. Dec. 26, 2023)................................................................................................12

*United States v. Johnson*, 323 U.S. 273 (1944) .................................................. 3, 13

*United States v. Miller*, 808 F.3d 607 (2d Cir. 2015) ................................... 2, 10, 13

*United States v. Passodelis*, 615 F. 2d 975 (3d Cir. 1980) .....................................11

*United States v. Pirello*, 255 F.3d 728 (9th Cir. 2001)..............................................8

*United States v. Ramirez*, 420 F.3d 134 (2d Cir. 2005).............................................3

*United States v. Rasheed*, 981 F.3d 187 (2d Cir. 2020)..........................................10

*United States v. Reed*, 773 F.2d 477 (2d Cir. 1985) ..................................................2

*United States v. Rodriguez-Moreno*, 526 U.S. 275 (1999)................................. 9, 10

*United States v. Rowe*, 414 F.3d 271 (2d Cir. 2005) .................................................13

*United States v. Sayer*, No. 2:11-CR-113-DBH, 2012 WL 2180577 (D. Me. June 13, 2012) ...............................................................................................................................8

*United States v. Saavedra*, 223 F.3d 85 (2d Cir. 2000) ...........................................3

*Walden v. Fiore*, 571 U.S. 277 (2014)....................................................................10

## Constitutional Provisions

U.S. Const. art. III, § 2, cl. 3 ....................................................................................2

U.S. Const. amend. VI ................................................................................................2

## Statutes

18 U.S.C. § 241 .................................................................................................. 3, 12, 13

18 U.S.C. § 2251 ........................................................................................................13

18 U.S.C. § 3237 .................................................................................................. 2, 12

Federal Rule of Criminal Procedure 18 ....................................................................2

## Other Authorities

Andrew Grosso, *The National Information Infrastructure*, 41 Fed. B. News & J. 481 (1994) ........................................................................................................................8

Brief of *Amicus Curiae* NACDL in Support of Appellant, in *United States v. Auernheimer*, 748 F.3d 525 (3d Cir. 2014)................................................................9

*Continuing Offenses*, Charles A. Wright & Arthur R. Miller, 2 Fed. Prac. & Proc. Crim. § 303 (4th ed.).................................................................................................12

United States Department of Justice, *Prosecuting Computer Crimes* Manual, https://www.justice.gov/d9/criminal-ccips/legacy/2015/01/14/ccmf2 ............. 11, 12

## INTEREST OF *AMICUS CURIAE*[1]

The National Association of Criminal Defense Lawyers ("NACDL") is a nonprofit, voluntary, professional bar association that works on behalf of criminal defense attorneys to ensure justice and due process for those accused of crime or misconduct. Its members include private criminal defense lawyers, public defenders, military defense counsel, law professors, and judges with experience in both federal and state courts throughout the United States. NACDL is dedicated to advancing the proper, efficient, and just administration of justice. NACDL files numerous *amicus* briefs each year in the U.S. Supreme Court and other federal and state courts, including this Court, to provide *amicus* assistance in cases that present issues of broad importance to criminal defendants, criminal defense lawyers, and the criminal justice system as a whole. In that context, NACDL has a significant interest in guaranteeing criminal defendants their rights under the Venue Clauses of the United States Constitution, which are the central issues addressed in this brief.

All parties have consented to the filing of this *amicus* brief.[2]

---

[1] *Amicus* states that no party's counsel authored this brief in whole or in part, and no party or person other than *amicus* or its counsel contributed money towards the preparation or filing of this brief.

[2] Accordingly, under Fed. R. App. P. 29(a), this brief may be filed without leave of the Court.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Proper venue is not a procedural technicality, but a core right guaranteed to all criminal defendants. As this Court noted in *United States v. Reed*, "the concept of a right to trial in the vicinage was so highly regarded as to appear *twice* in the Constitution." 773 F.2d 477, 480 (2d Cir. 1985) (emphasis added); *see also United States v. Cabrales*, 524 U.S. 1, 6 (1998) ("Proper venue in criminal proceedings was a matter of concern to the Nation's founders. . . . The Constitution twice safeguards the defendant's venue right."); U.S. Const. art. III, § 2, cl. 3 ("The trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed."); *id.* amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed.").

Moreover, there is a statute that establishes venue for federal prosecutions of continuing offenses and those spanning more than one district. 18 U.S.C. § 3237(a). There is also a provision in the Federal Rules of Criminal Procedure, Rule 18, relating to venue.

"The Republic's Founders instituted [venue] requirements . . . in response to years in which colonists were hauled to England to stand trial for treason and other charges based on acts undertaken on this side of the Atlantic." *United States v. Miller*, 808 F.3d 607, 614 (2d Cir. 2015). "Among the most prominent reasons for

the provisions were action taken by England that led up to the Revolution," and the transportation of American colonists to England for trial is "listed as one of the causes of the Revolution and is set forth in the Declaration of Independence." *United States v. Saavedra*, 223 F.3d 85, 88 (2d Cir. 2000).

Venue serves as a "safeguard against the unfairness and hardship" that a defendant faces. *United States v. Cores*, 356 U.S. 405, 407 (1958). Granting the government too much "leeway" in choosing venue creates "the appearance of" and "temptation to" abuse. *United States v. Johnson*, 323 U.S. 273, 275-76, 278 (1944). To protect this fundamental safeguard, "provisions implicating venue are to be narrowly construed." *United States v. Ramirez*, 420 F. 3d 134, 146 (2d Cir. 2005).

Prosecuting Douglass Mackey in the Eastern District of New York ("EDNY") defies these constitutional guarantees. On January 27, 2021, Mackey was arrested in his Southern Florida home for violating 18 U.S.C. § 241 (conspiracy against rights). In October 2016, as a resident of Manhattan (that is, a resident of the Southern District of New York—*not* the Eastern District), he posted two images, or "memes," to Twitter that urged others to vote for Hillary Clinton by text message, which the government alleged was in furtherance of a conspiracy (with other Twitter users) to impair the right to vote.

The following facts are not in dispute:

- Neither Mackey nor any of his co-conspirators set foot in EDNY.

3

- Neither Mackey nor any of his co-conspirators engaged in an overt act, or any act at all, in furtherance of the conspiracy in EDNY.

- While the government tracked down EDNY residents who texted the number on the meme, none said they failed to vote as a result of the meme. In fact, none even remembered viewing it.

*See* Mackey Br. 35-38.

Nevertheless, the district court reasoned that *any* judicial district where it is foreseeable that the online content can be viewed, or where the content passed through between servers, constitutes proper venue for this crime. *See* SA15. If permitted to survive this appeal, these theories would grant the government universal venue to try a case in any of the 94 judicial districts it sees fit.

Despite decades of federal prosecutions for online crimes, no court has found that the ubiquity of the internet allows the government choice of venue in *any* district. In fact, courts have cautioned that the internet neither alters nor relaxes the constitutional demands for narrow venue. In formulating its unrestricted theory of internet venue, the district court resorted to strained analogies to wire fraud and direct electronic communications which are clearly distinguishable, and even contradicted by the Department of Justice's own manual that guides such prosecutions. Finally, this case's political character raises the specter that venue

could be used for political advantage to try persons in venues in which their political orientation may be unpopular.

## **ARGUMENT**

I. **The District Court's theories of venue allow the government to prosecute a defendant in *any* judicial district, contrary to this Court's precedents.**

The government did not allege that Mackey or any of his co-conspirators set foot or conducted any acts relevant to their alleged crime in the Eastern District. Instead, it claimed that venue could be found if any of the following occurred:

- Mackey's tweets "passed through the Eastern District of New York as they were transmitted to Twitter's servers and beyond";

- His tweets "were viewed in the Eastern District and . . . such viewing (even if innocent) was a foreseeable overt act furthering the ends of the conspiracy"; or

- "[E]ither the defendant, or a co-conspirator, or an innocent non-conspirator (caused to act by members of the conspiracy) tweeted an allegedly deceptive image into the Eastern District," and this was "reasonably foreseeable" to the defendant.

The district court instructed the jury, accordingly, that any one of the above circumstances was sufficient to make EDNY a proper venue. *See* SA99.

Neither the government nor the district court made any attempt to limit this theory or provide any comfort or assurance that it would not permit venue in any and all districts. The problem is, of course, that if an individual posts material on social

6

media or another website, it will be reasonably foreseeable that such material could be viewed *across the country* and that it will have traveled over wires in every district to get there.

This Court has rejected such an expansive theory of venue. For example, in *United States v. Brennan*, 183 F.3d 139 (2d Cir. 1999), this Court admonished that venue should not be "so freely construed as to give the Government the choice of a tribunal favorable to it." 183 F.3d at 147. Here, though, neither the government nor the district court could point to a single case that has stated that venue would be proper in *any* district in which a website could be viewed or through which the communications passed.

The district court instead concluded that the lack of precedent was not an obstacle, because the law relating "continuing crimes can be committed through electronic communications must keep pace and evolve." SA18. That reasoning, however, militates *against* the government's venue theory, as supported by Justice Kennedy's reasoning—from 22 years ago—in *Ashcroft v. ACLU*, 535 U.S. 564 (2002), in which he observed, "whether it may be said that a website moves 'through' other venues . . . is less certain." 535 U.S. at 602 (Kennedy, J., concurring); *id.* ("The more venues the Government has to choose from, the more speech will be chilled by variation across communities.").

7

The internet has been widely available for over three decades, and the federal courts have heard criminal cases based on deceptive website content and (in more recent years) social media postings, since their inception. *See, e.g.*, *United States v. Pirello*, 255 F.3d 728, 730 (9th Cir. 2001) (involving a 1999 scheme to post "fraudulent Internet advertisements"); *United States v. Sayer*, No. 2:11-CR-113-DBH, 2012 WL 2180577, at *1 (D. Me. June 13, 2012) (involving the creation of "fictitious internet advertisements and social media profiles" on MySpace, Yahoo, and Facebook in 2009); Andrew Grosso, *The National Information Infrastructure*, 41 FED. B. NEWS & J. 481 (1994) (discussing challenges federal courts faced in prosecutions of cybercrimes, including problems with venue in the early 1990s).

Thus, the dearth of prior prosecutions relying on the theory of venue advanced and adopted here is not due to the internet's supposed infancy. Indeed, courts, including in this Circuit, have cautioned that the internet requires narrow construction of venue.

The leading case on internet venue, *United States v. Auernheimer*, 748 F.3d 525 (3d Cir. 2014), involved a hacker who accessed confidential information of over 100,000 of AT&T's customers. NACDL filed an *amicus* brief in that case maintaining that "given the interconnected nature of the Internet," permitting venue to lie in a district other than one in which the defendant committed the essential elements of the crime "causes extreme prejudice to the accused because it allows

prosecutors to bring charges in virtually any district, and thus to cherry-pick the most advantageous forum." *See* Br. of *Amicus Curiae* NACDL in Support of Appellant, https://www.nacdl.org/getattachment/bb790ad4-7fbd-4a5a-ab72-bb4057ffbb61/u-s-v-andrew-_weev_-auernheimer-amicus.pdf, at 21.

As with Mackey here, neither the defendant in *Auernheimer* nor his co-conspirator, nor even the internet servers, were located within the district in which he was prosecuted. 748 F.3d at 531. Also, as here, the government alleged that some of thousands of people across the country affected by the hacking lived in the district of prosecution. *Id.*

Notwithstanding that argument, the Third Circuit, applying the Supreme Court's "essential conduct element" test set forth in *United States v. Rodriguez-Moreno*, 526 U.S. 275, 280 (1999), concluded that even if the defendant engaged in conduct that affected the entire country, it "cannot confer venue in every district in which a potential victim lived." *Auernheimer*, 748 F.3d at 538.

While it may be difficult to define every essential conduct element in the present case, it is indisputable that the transmission of data or the viewing of the tweets by others is not among them. *See* Mackey Br. 35-43.

Without elaboration, the district court incorrectly claimed *Auernheimer* "runs contrary to controlling case law in the Second Circuit." SA19. Instead, *Auernheimer* considered this Court's "substantial contacts" test in its reasoning, and, although the

9

Third Circuit declined to adopt that test, its holding is not *contrary* to this Court's precedents. 748 F. 3d at 536.[3] Moreover, this Court frequently applies the "essential conduct element" test that the Third Circuit applied in following *Rodriguez-Moreno*. *See, e.g.*, *Miller,* 808 F.3d at 615 ("in our Circuit, we have *also* examined" whether "the criminal conduct has 'substantial contacts'" *in addition to* identifying "the crime's "essential conduct elements") (emphases added); *see also United States v. Rasheed*, 981 F.3d 187, 193 (2d Cir. 2020); *United States v. Coplan*, 703 F.3d 46, 78 (2d Cir. 2012).

Moreover, the district court's reasoning falters in light of a case that this Court decided *after* Mackey's conviction. In *United States v. Calonge*, 74 F.4th 31 (2d Cir. 2023), this Court explicitly "appl[ied] the same analysis" as *Auernheimer* to a cybercrime case. *Id*. at 37. While noting that the "proliferation of Internet-related crimes has further complicated the issue of appropriate venue," this Court concluded in *Calonge* that "technological changes" do not change the court's duty to "separate

---

[3] Appellant thoroughly and persuasively addresses why the "substantial contacts" test does not confer proper venue here, either. Among other arguments, he notes that courts have routinely rejected broad personal jurisdiction in civil cases based on website and social media postings. Mackey Br. 44-46. *Amicus* adds that a non-resident must have "minimum contacts" with the forum state to establish personal jurisdiction. *Walden v. Fiore*, 571 U.S. 277, 282 (2014). If online postings do not create *minimum* contacts required for personal jurisdiction, they certainly cannot create the *substantial* contacts needed for criminal venue. *Cf. United States v. Blaszczak*, 56 F.4th 230, 246 (2d Cir. 2022) ("It should not require *fewer* elements to prove a criminal conviction than to impose civil penalties for the same conduct.") (Walker, J., concurring) (emphasis added).

'essential conduct elements' from 'circumstance elements.'" *Id*. at 35 (citing *Auernheimer*, 748 F.3d at 541); *see also United States v. Passodelis*, 615 F. 2d 975, 977 (3d Cir. 1980) ("[t]hough our nation has changed in ways which it is difficult to imagine that the Framers of the Constitution could have foreseen, the rights of criminal defendants which they sought to protect in the venue provisions of the Constitution are neither outdated nor outmoded").

## II. The district court mistakenly viewed posting on a website as analogous, for venue purposes, to making direct communications in the commission of wire fraud.

Lacking precedent to support that an internet user's "view" of a website establishes venue in that user's district, the District Court mistakenly analogized viewing websites to cases that have found "venue to be proper in districts where emails, faxes, text messages, or messages to subscribers that furthered the ends of the conspiracy were *sent or received*." SA14 (emphasis added). Yet here, Mackey's tweet was not sent from EDNY, and an internet user's reading a tweet that is available for the whole world to see differs facially from a specific person's receipt of a phone call, text message, or email.

Even the Justice Department's *Prosecuting Computer Crimes* Manual notes that "a court may find it difficult to conclude that a crime was committed in a district merely because packets of information happened to travel through that district." https://www.justice.gov/d9/criminal-ccips/legacy/2015/01/14/ccmf2 at 119; *see*

11

*also United States v. Fortenberry,* No. 22-50144, 2023 U.S. App. LEXIS 34167, at *19 (9th Cir. Dec. 26, 2023) (disagreeing with the suggestion that "communications can be prosecuted as 'continuing offenses' that 'span space and time'").

The district court, citing *United States v. Brown*, 293 F. App'x 826, 829 (2d Cir. 2008), which found pass-through venue for wire transfers, concluded that there is "no meaningful difference between automatic routings of funds or wire communications and the movement of electronic messaging over Twitter servers." SA18. But the DOJ Manual specifically distinguishes *Brown* as presenting an unusually "stronger" case for pass-through venue because, in wire-fraud, the *transmission* of the communication *itself* "constitutes the criminal offense." *Prosecuting Computer Crimes*, *supra*, at 119. Additionally, wire fraud supports pass-through venue under the second paragraph of 18 U.S.C. § 3237(a), which expressly provides for venue in a district "through, or into which such commerce, mail matter, or imported object or person moves." *See also Continuing Offenses*, Charles A. Wright & Arthur R. Miller, 2 FED. PRAC. & PROC. CRIM. § 303 (4th ed.). In contrast, venue for cases arising under Section 241 is governed by the narrower first paragraph of § 3237(a), which permits venue only where an "offense was begun, continued, or completed."

The centrality of interstate commerce to the crime itself, coupled with the existence of direct communication from a defendant to another person, distinguishes

wire fraud—and other cases in which the receipt of an electronic transmission is relevant to venue—from this case. The district court also cited *United States v. Rowe*, 414 F.3d 271 (2d Cir. 2005), which found venue to be proper in the Southern District of New York—where officers viewed the defendant's invitation to upload child pornography—even though the defendant resided in the Eastern District of Kentucky. But that holding was expressly premised on the defendant's having posted an advertisement that invited users to trade images from their location back to him. 414 F.3d at 274-76. Further, unlike with Mackey's tweet, the Court in *Rowe* emphasized that there was "no dispute that the offer was transported in interstate commerce by computer." *Id.* at 278. As with wire fraud—and unlike with Section 241—transmitting a communication was itself an element of the crime. *See* 18 U.S.C. § 2251(c)(2)(A). And the theory of venue in *Rowe* was still not so expansive as to contemplate pass-through venue in every jurisdiction through which an image might be sent.

### III. A narrow construction of venue is necessary to promote and preserve "fair administration of criminal justice and public confidence in it."

Restrictions on venue are necessary to prevent the "appearance of and potential for prosecutorial abuse." *Miller*, 808 F.3d at 614. Otherwise, the potential for abuse of venue would undermine "fair administration of criminal justice and public confidence in it" *Johnson*, 323 U.S. at 275-76.

Permitting the type of manipulation of venue that occurred herein would inexorably damage public confidence in the administration of criminal justice because it would not only invite abuse but also intensify the public perception thereof.  For instance, in today's world, in which everyone in some capacity operates in a virtual world without geographic limits, prosecutors could institute cases in venues in which a particular defendant was politically unpopular, and therefore deprive that defendant of a fair cross section of the appropriate jury in the proper community in which the alleged conduct occurred.

Such contrivance would not only deny defendants specific constitutional rights but would also impair public confidence in the administration of criminal justice.  It would also encourage retaliatory—essentially political—prosecutions, thereby aggravating the problem.  Indeed, the Framers, in including in the Declaration of Independence their objections to American colonists being transported to and tried in England before hostile juries, recognized the political dangers in permitting abuse of venue.

The District Court's ruling below unfortunately reinstates that peril, and it is respectfully submitted that this Court should therefore reverse that decision.

## **<u>CONCLUSION</u>**

This Court should reverse the conviction below.

Date: January 12, 2024                Respectfully submitted,

/s/ Kyle Singhal
Kyle Singhal
HOPWOOD & SINGHAL PLLC
*Counsel for Amicus Curiae*
1701 Pennsylvania Ave., NW #200
Washington, D.C. 20006
Telephone: (817) 212-9041
kyle@hopwoodsinghal.com

Joshua L. Dratel
Law Offices of Dratel & Lewis
29 Broadway, Suite 1412
New York, New York 10006
(212) 732-0707
jdratel@dratellewis.com

## **CERTIFICATE OF SERVICE**

I certify that the foregoing brief was filed through the Court's ACMS system and will be served electronically upon all registered participants identified on the Notice of Electronic Filing.

Respectfully submitted,

/s/ Kyle Singhal
Kyle Singhal
*Counsel for Amicus Curiae*

## **CERTIFICATE OF COMPLIANCE**

I certify that the foregoing brief complies with Fed. R. App. P. 27 and 32 because it contains 3,075 words and was typed in 14-point Times New Roman font.

Respectfully submitted,

/s/ Kyle Singhal
Kyle Singhal
*Counsel for Amicus Curiae*